UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  
--------------------------------------------------------------X  
SHERINA THOMAS,

        Plaintiff,

-against-

EONY LLC, and DAVID SHAVOLIAN, individually,

        Defendants.  
--------------------------------------------------------------X

Civil Docket No.:

**COMPLAINT**

PLAINTIFF DEMANDS A  
TRIAL BY JURY

Plaintiff, by her attorneys, Arcé Law Group, PC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. §201 *et seq.*), ("FSLA" or "the Act") for damages to redress the injuries she has suffered as a result of not being paid overtime wages and is seeking to recover unpaid back wages, and an additional amount as liquidated damages, reasonable attorneys' fees and costs. Plaintiff also complains under of the laws of the State of New York and the City of New York, based upon the supplemental jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries she has suffered as a result of, *inter alia*, sex/gender discrimination, sexual harassment, *quid pro quo* sexual harassment, retaliation and constructive discharge by Defendants and wage violations.

1

## JURISDICTION AND VENUE

2. The Court has jurisdiction under 28 U.S.C. § 1331 and 1343 and supplemental jurisdiction under 28 U.S.C. § 1367.

3. This action involves a question of federal law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claims herein occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

## PARTIES

5. Plaintiff, Sherina Thomas, is a resident of the State of New York, County of Kings.

6. At all times material, Defendant EONY LLC is a domestic limited liability company duly existing by virtue of the laws of the State of New York, located at 469 7th Avenue, 4th Floor, New York, New York 10018.

7. At all times material, Defendant DAVID SHAVOLIAN (hereinafter referred to as "SHAVOLIAN") was and is the owner of Defendant EONY LLC.

8. At all times material, Defendant SHAVOLIAN is a resident of the State of New York.

9. At all times material, Defendant SHAVOLIAN was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

10. At all times material, Defendant SHAVOLIAN was and is the owner of Defendant EONY, LLC.

11. At all times material, Defendant SHAVOLIAN worked for Defendant EONY, LLC and had "an ownership interest in the company" and/or "the power to do more than carry out personnel decisions made by others."

12. **Under New York law, Defendant SHAVOLIAN is personally liable to Plaintiff for the discrimination as an owner of the Defendant Corporation.**

13. Defendant EONY, LLC and Defendant SHAVOLIAN are also herein collectively referred to as "Defendants."

14. At all times material, Plaintiff was an employee of Defendants.

15. At all times material, Plaintiff was engaged in commerce while working for Defendants.

16. Plaintiff was regularly not paid for all her hours worked.

17. Plaintiff was regularly engaged by Defendants to work more than 40 hours in a week and was not paid any overtime wages for weeks in which she worked more than 40 hours as required by the FLSA and New York State Wage and Hour Laws.

18. At all times material, Defendants did, and continue to do, substantial business in New York and engage in commerce or the production of goods for commerce within the meaning of the FLSA.

19. Upon information and belief, at all times material, Defendants have employed two or more individuals "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce."

20. Upon information and belief, Defendants grossed more than $500,000 in the past fiscal year.

## MATERIAL FACTS

Sexual Harassment:

21. Plaintiff initially met Defendant SHAVOLIAN answering an advertisement for children models, on behalf of her own children.

22. While waiting to be interviewed, Defendant SHAVOLIAN walked into the office and presented himself to Plaintiff as the person with whom she would be interviewing.

23. Defendant SHAVOLIAN led Plaintiff to the 4th floor and into his office, then asked Plaintiff to remove her blazer so he could see the shape of Plaintiff's body.

24. Plaintiff then made it known that she was not interested in modeling, that Plaintiff was only there in the interest of her children.

25. Defendant SHAVOLIAN ignored Plaintiff's requests and continued to speak about the modeling business and that he owned many companies.

26. Defendant SHAVOLIAN told Plaintiff **"I could help you to model."** He then **forced Plaintiff to show her bare breasts.**

27. Defendant SHAVOLIAN then assessed Plaintiff's breasts by taking his hands and squeezing, fondling and jiggling Plaintiff's breasts and replied **"Your breasts are not firm enough. I can help you get surgery to fix those breasts."**

28. Defendant SHAVOLIAN took Plaintiff's name and contact information and then dismissed Plaintiff like she, and her breasts, were "toys" and said **"I will call you if anything comes up in terms of available work."**

29. In or around May 2012, Defendant SHAVOLIAN contacted Plaintiff in regard to interviewing for a receptionist position at Defendant EONY LLC.

30. In or around May 2012, Plaintiff interviewed with Defendant SHAVOLIAN. At the interview, Plaintiff was asked questions by Defendant like **"Do you shave or wax your pussy?"**

31. Out of work and needing a job, Plaintiff ignored the comments and on or about May 21, 2012, she began her employment with Defendants as a "Receptionist."

32. Although Plaintiff was promoted to "Manager" by Defendant SHAVOLIAN, Plaintiff soon realized that her duties as a Manager required her to be in constant contact with Defendant SHAVOLIAN.

33. Immediately, and continuing throughout Plaintiff's employment with Defendants, Plaintiff was subjected to numerous discriminatory acts, and a hostile work environment.

34. By way of example, Plaintiff was required to do "rounds" or walk the floors with Defendant, checking in on properties and on building tenants. Defendant SHAVOLIAN would insist that Plaintiff accompany him into the restroom while he would urinate and have conversation with Plaintiff. He would make her stand right next to him while he urinated.

35. On one occasion, Defendant SHAVOLIAN forced Plaintiff to go with him to a vacant floor in the building so he could remove his undershirt to show Plaintiff his body. Plaintiff was required to stand and watch Defendant SHAVOLIAN undress.

36. On another occasion, Defendant SHAVOLIAN telephoned Plaintiff to inform her that his **underwear was too tight** and that **they were "squeezing [his] balls."** He then asked Plaintiff what he should do about this problem.

37. On one occasion, Defendant SHAVOLIAN asked Plaintiff to **help him find a dermatologist because he had an anal rash and asked Plaintiff to take a look at the rash.** Plaintiff refused.

38. On another occasion, when Defendant SHAVOLIAN called Plaintiff into his office, Defendant SHAVOLIAN was standing in his office with **his pants down and his penis exposed**. Defendant then told Plaintiff to help him put lotion on his penis.

39. Defendant SHAVOLIAN would tell Plaintiff **"Your ass is so big. Do you prefer oral or traditional missionary sex?"**

40. On many occasions, Defendant SHAVOLIAN inquired as to whether Plaintiff liked any other females around the building and would beg Plaintiff to get pictures of female genitalia for him to view.

41. In or around December 2012, Defendant SHAVOLIAN propositioned Plaintiff for oral sex in exchange for him paying a $1,200.00 bill due of hers. Defendant SHAVOLIAN then told Plaintiff that he was going to add a $600 lawyer fee (in the hope of scaring Plaintiff into

accepting Defendant SHAVOLIAN's proposition for oral sex). Plaintiff became immediately upset and told Defendant SHAVOLIAN **"Your disgusting!"** Defendant SHAVOLIAN then laughed in Plaintiff's face.

42. Defendant SHAVOLIAN's actions were intended to coerce and/or intimidate Plaintiff from pursuing her legal rights.

43. Plaintiff attempted to change the subject each and every time Defendant SHAVOLIAN made sexually explicit remarks, to make it clear to him that she did not welcome the comments or harassment.

44. In or around April 2013, Defendant SHAVOLIAN asked Plaintiff to take him to an empty office. When Plaintiff took Defendant SHAVOLIAN to an empty office, Defendant SHAVOLIAN made Plaintiff engage in a pointless conversation while he began to undress.

45. Defendant SHAVOLIAN then told Plaintiff that she had two weeks vacation, and went on to tell her that she could take vacation one of two ways: either take the time off, or work and get paid an extra week.

46. Defendant SHAVOLIAN then told Plaintiff that **"If you're a good girl, you can have both."** (referring to a week of vacation and an extra week of pay if Plaintiff succumbed to Defendant SHAVOLIAN's sexual advances).

47. Nevertheless, Defendant SHAVOLIAN continued to sexually harass Plaintiff throughout her employment.

48. When Plaintiff was present at work, it was an endless mental and physical battle. Plaintiff was scared to come to work or to be alone with Defendant SHAVOLIAN.

49. Defendants created a sexual hostile work environment that no reasonable person would tolerate.

50. On or about May 1, 2013, Plaintiff could no longer endure the harassment, and quit.

51. On or about May 1, 2013, Defendants constructively terminated Plaintiff.

52. As a result of Defendants' conduct, Plaintiff has been forced to seek out psychological treatment.

53. Defendants' actions and conduct were intentional and intended to harm the Plaintiff.

54. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55. As a result of the Defendants' discriminatory and intolerable treatment, Plaintiff suffered severe emotional distress.

56. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

57. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of all lower Courts.

58. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

<u>Wage Violations:</u>

59. Beginning on or around June 11, 2012, Plaintiff worked from 9:00 a.m. until 5:30 p.m., Monday through Friday with a 30 minute break for lunch, or 40 hours a week.

60. However, beginning on or about October 1, 2012, Plaintiff still worked from 9:00 a.m. until 5:30 p.m., Monday through Friday but was only permitted to take 15 minutes for her lunch

break. Therefore, after October 1, 2012, Plaintiff worked 41.25 hours each week but was only paid for 40 hours of work and not paid any overtime wages. This meant that each month Plaintiff was not paid overtime wages for five hours of overtime she worked.

61. For example, during the week of November 5 through November 9, 2012, Plaintiff started work by 9:00 a.m. each day and worked until at least 5:30 p.m. each day. During this week Plaintiff only took a 15 minute lunch break each day. Therefore, Plaintiff worked 1 hour of overtime this week for which she was not paid.

62. In addition, beginning on or around October 1, 2012, on Tuesdays and Thursdays, twice a month Plaintiff was required to work through lunch. This added an additional three hours of overtime each month for which she was not paid from October 1, 2012, through the end of her employment on May 1, 2013.

63. Starting in or around late December 2012 or early January 2013, Defendant SHAVOLIAN began reducing all of Plaintiff's lunch breaks to between five and 10 minutes, which meant Plaintiff, began working even more overtime hours for which she was not paid. This continued throughout the remainder of her employment with Defendants.

64. For example, during the week of April 22 through April 26, 2013, Plaintiff started work by 9:00 a.m. each day and worked until at least 5:30 p.m. each day. During this week Plaintiff was not permitted to take a lunch break Tuesday, April 23rd or Thursday, April 25th because she was required to assist EONY's accountant. Plaintiff was only given five to 10 minutes to eat lunch each day on Monday, Wednesday and Friday. Therefore, Plaintiff worked two hours or more of overtime this week for which she was not paid.

65. Although Plaintiff's position was "Manager," she was directly and closely supervised by Defendant SHAVOLIAN and did not exercise any discretion or independent judgment while engaged in her principle duties.

66. Plaintiff's primary duties were to collect rent payments from tenants, check leases to make sure they were not about to expire, modify leases that were about to expire by inserting a new date, obtain signatures on leases at Defendant SHAVOLIAN'S instruction, answer telephones, arrange furniture in newly rented offices according to the new tenant's instruction, relay tenant complaints to Defendant SHAVOLIAN, conduct daily rounds for each rented office space to verify that all office furniture was present and accounted for by completing a furniture checklist provided to Plaintiff by Defendant SHAVOLIAN, and showing prospective tenants vacant offices.

67. Plaintiff did not formulate or make any decisions concerning the Defendants' standard practices and operating procedures. Nor was Plaintiff authorized to deviate from the Defendants' standard practices and procedures. Plaintiff was required to seek instruction and direction from Defendant SHAVOLIAN for even the most elementary issues.

68. For example, Plaintiff received complaints from tenants if it was too hot or cold in the offices they rented from Defendant EONY, LLC. Plaintiff was required to relay the complaints to Defendant SHAVOLIAN who would instruct Plaintiff to either adjust the temperature or leave it alone. The same was true for any other complaints by tenants. Plaintiff would relay all complaints to Defendant SHAVOLIAN who would instruct Plaintiff whether or not to call a designated service vendor.

69. Plaintiff also could not take a lunch break without Defendant SHAVOLIAN'S permission.

70. The Defendants had no method by which Plaintiff could accurately record and/or report her hours worked.

71. Plaintiff was designated an independent contractor.

72. Plaintiff was paid on a bi-weekly basis. From October 1, 2012, through the end of her employment with Defendants Plaintiff was paid $1,035 every two weeks even when she

worked more than 40 hours in a week.

73. Although Plaintiff was never paid for any hours she worked beyond 40 hours, if she took a personal day or half-day, those hours were deducted from her pay checks.

74. Plaintiff worked more than 40 hours a week and was not paid any wages for her overtime.

75. Defendants did not pay Plaintiff for all the hours she worked, did not give Plaintiff a meal break contrary to policy, did not pay Plaintiff minimum wage, and did not pay Plaintiff the statutory "spread of hours" to which she was entitled.

76. Defendants' unlawful actions were a policy and/or plan implemented at Defendants' location.

77. Defendants violated the FLSA and New York State Laws by not paying Plaintiff the required hourly wage rate.

## AS A FIRST CAUSE OF ACTION
## UNDER THE FAIR LABOR STANDARDS ACT
## OVERTIME

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth fully herein.

79. Defendants willfully employed Plaintiff in the afore-mentioned enterprise and failed to compensate Plaintiff for her employment in excess of 40 hours per week, at a rate of at least one and one-half times the rate at which she was employed.

80. Defendants failed to pay overtime wages to Plaintiff as required by the FLSA, 29 U.S.C. §201 et seq. and its implementing regulations.

81. Defendants' failure to pay Plaintiff overtime pay in accordance with the FLSA, was a direct violation of the FLSA, specifically 29 U.S.C. §207.

82. Defendants' failure to pay proper overtime wages for each hour worked over 40 per week was willful within the meaning of 29 U.S.C. §255.

83. Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

84. As a result of the underpayment of wages alleged in this Complaint, Plaintiff has been damaged in at least an amount equal to such underpayment of wages, and Defendants are therefore indebted to Plaintiff for back wages.

85. Defendants willfully violated the Act.

## AS A SECOND CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## OVERTIME RATE

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

87. Plaintiff was an employee of Defendants within the meaning of New York Wage Regulations, specifically NYCRR Labor Section 138 et seq.

88. Defendants failed to pay Plaintiff a premium for hours worked in excess of 40 hours per week.

89. Defendants violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2.

90. Defendants also failed to pay Plaintiff a premium/additional amount for hours worked in excess of 10 hours per day.

91. Under New York State law, an employee is entitled to an extra hour's wages for any day when the employee's "spread of hours" exceeds 10 hours. 12 NYCRR § 142-2.4.

92. Defendants also violated New York's Labor law including but not limited to Labor Law 12 NYCRR § 142-2; §§ 198, 162, 663 et seq.

93. Plaintiff also claims unlawful retaliation under State Law.

94. On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

## AS A THIRD CAUSE OF ACTION
## UNDER NEW YORK LABOR LAW
## GAP-TIME

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

96. Under N.Y. Lab. Law § 663(1), "If any employee is paid by his or her employer less than the wage to which he or she is entitled…he or she shall recover in a civil action the amount of any such underpayments…."

97. Defendants failed to pay Plaintiff for all her hours worked in violation of New York Labor Law § 663(1).

## AS A FOURTH CAUSE OF ACTION
## UNDER NEW YORK LABOR LAW
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## EMPLOYEE RECORDS

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

99. Defendants failed to keep employee-specific records documenting, *inter alia,* actual hours worked in each week, in violation of New York Labor Law § 661 and 12 NYCRR 142-2.6.

100. Defendants failed to furnish statements with full and accurate pay and hour information to Plaintiff, in violation of 12 NYCRR 142-2.7.

## AS A FIFTH CAUSE OF ACTION
### UNDER NEW YORK CITY ADMINISTRATIVE CODE
### <u>RETALIATION</u>

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

102. New York City Administrative Code Title 8-107(7) provides that:

> It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter...

103. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against the Plaintiff, including, but not limited to, terminating Plaintiff's employment because she opposed Defendants' unlawful employment actions. This section also applies to Plaintiff's retaliation claims based on complaints of wage violations.

## AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### <u>DISCRIMINATION</u>

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

105. Executive Law § 296 provides that  that  "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

106. Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her sex, together with sexual harassment and *quid pro quo* sexual harassment.

### AS A SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### RETALIATION

107. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

108. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

109. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS AN EIGHTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### DISCRIMINATION

110. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

111. The Administrative Code of City of NY § 8-107 [1] provides that it shall be unlawful "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual

orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

112. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her gender together with sexual harassment, and *quid pro quo* sexual harassment.

### AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### RETALIATION

113. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

114. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

115. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiff' opposition to the unlawful employment practices of Plaintiffs employer.

## AS A TENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### SUPERVISORY LIABILITY

116. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

117. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
   (1) the employee or agent exercised managerial or supervisory responsibility; or
   (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
   (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

118. Defendants violated the section cited herein as set forth.

## AS AN ELEVENTH CAUSE OF ACTION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### INTERFERENCE WITH PROTECTED RIGHTS

119. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

120. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or

on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

121. Defendants violated the section cited herein as set forth.

## AS A TWELTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

122. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

123. Defendants engaged in extreme and outrageous conduct.

124. Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to Plaintiff.

125. There exists a causal connection between the above conduct and said injury.

126. As a result of said conduct Plaintiff suffered and suffers from severe emotional distress.

127. Defendants breached a duty owed directly to the Plaintiff that either endangered Plaintiff's physical health and safety and/or caused Plaintiff to fear for Plaintiff's own health and safety.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by the FLSA and all applicable New York State and City Labor Laws by not paying Plaintiff overtime wages and/or for all her hours worked;

B. Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices;

C. Declaring that Defendants' violations of overtime wage protections were willful;

D. Granting judgment to Plaintiff for her claims for unpaid wages as secured by the Fair Labor Standards Act as well as an equal amount in liquidated damages;

E. Granting judgment to Plaintiff for her claims for unpaid wages as secured by New York State Wage and Hour laws and New York State Labor Laws, as well as an equal amount in liquidated damages;

F. Declaring that the Defendants engaged in unlawful employment practice prohibited by the New York City Administrative Code Title 8, §8-107 et. Seq., the New York Executive Law; and New York Common Law; and that the Defendants discriminated against Plaintiff on the basis of sex/gender, together with sexual harassment.

G. Declaring that Defendants Intentionally caused Plaintiff emotional distress.

H. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

I. Awarding Plaintiff punitive damages;

J. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful termination of employment and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

K. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

L. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
November 27, 2013

**ARCÉ LAW GROUP, PC**
*Attorneys for Plaintiff*

By: _____
W. Gordon Kaupp, Esq.
30 Broad Street, 35th Floor
New York, New York 10004
(212) 248-0120